**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Thomas F. Logan, Jr., | : | Case No. 3:10 CV 1712 |
| Plaintiff and Counterclaim Defendant, | : | |
| v. | : | |
| United States of America, | : | **MEMORANDUM DECISION** |
| Defendant and Counterclaim Plaintiff, | : | **AND ORDER** |
| v. | : | |
| John C. Zam, | : | |
| Counterclaim Defendant. | : | |

Plaintiff Thomas F. Logan, Jr., seeks the return of monies allegedly erroneously and illegally collected by the Internal Revenue Service and abatement of assessment of his tax liability as set forth by the Internal Revenue Service. The parties consented to have the undersigned Magistrate adjudicate all further proceedings in this matter and enter judgment pursuant to 28 U.S.C. § 636(c) and FED.R.CIV.P. 73 (Docket No. 22). Pending is the United States' Motion for Summary Judgment (Docket No. 35), filed on February 17, 2012, Thomas Logan's Response (Docket No. 40), filed on March 25, 2012, and the United States' Reply (Docket No. 41), filed on April 5, 2012.

For the reasons that follow, the Magistrate grants Defendant's Motion for Summary Judgment.

## II. FACTUAL BACKGROUND.

Plaintiff Thomas F. Logan, Jr. ("Plaintiff") and Counterclaim Defendant John C. Zam ("Zam") founded X-L Enterprises, Inc. ("X-L" or "the Company") on July 31, 1991 (Docket No. 35, Attachment 5). Throughout its tenure, X-L was engaged in the heating, ventilation, and air conditioning business ("HVAC"), installing HVAC systems in commercial properties, light industrial buildings, schools, and offices (Docket Nos. 35, Attachment 5, p. 3 of 8; Attachment 6, p. 12 of 30). Initially, X-L consisted of only two shareholders, Plaintiff and Zam, who each held a one-half interest in the Company (Docket No. 35, Attachment 6, p. 6 of 30). The parties also established a second company, Gazelle Leasing, Inc. ("Gazelle"), whose sole purpose was to own the building that housed X-L, as well as all of X-L's vehicles and fabrication equipment (Docket Nos. 35, Attachment 6, p. 10 of 30; Attachment 7, p. 26-27 of 89).[1] In addition to being the only shareholders, Plaintiff and Zam were also the only officers of X-L and Gazelle; Plaintiff served as both Vice President and Treasurer and Zam served as President and Secretary (Docket No. 35, Attachment 7, p. 16 of 89). Both Plaintiff and Zam occasionally received dividend payments from X-L (Docket No. 35, Attachment 7, p. 28 of 89).

From X-L's inception, Plaintiff and Zam had different day-to-day responsibilities: Plaintiff was in charge of fabricating the material used in the HVAC units, his primary workspace being X-L's workshop (Docket Nos. 35, Attachment 6, p. 17-18 of 30; Attachment 7, p. 17 of 89). Zam was in charge

---

[1]Approximately seven to eight months into X-L's existence, Plaintiff and Zam took on a third shareholder, Hal Graham ("Graham") (Docket No. 35, Attachment 6, p. 6 of 30). At that point, each party held a one-third interest in X-L (Docket No. 35, Attachment 6, p. 6 of 30). Graham retired in 2001 and retained no stake in either X-L or Gazelle Leasing pursuant to a previously established buyout agreement (Docket No. 35, Attachment 6, p. 7 of 30). Graham is not a party to this suit, nor does any party allege he should be. Upon Graham's retirement, Plaintiff and Zam returned to their one-half shareholder status (Docket No. 35, Attachment 6, p. 10 of 30).

of HVAC installation and transacting company business, spending most of his time in the office (Docket Nos. 35, Attachment 6, p. 20 of 30; Attachment 7, p. 17 of 89). Both parties had the ability to sign checks (Docket Nos. 35, Attachment 6, p. 18 of 30; Attachment 7, p. 13-14 of 89), co-sign or guarantee loans on behalf of X-L (Docket No. 35, Attachment 6, p. 8 of 30), access the Company checkbook (Docket No. 35, Attachment 6, pp. 17-18 of 30), and hire and fire employees (Docket No. 35, Attachment 7, p. 16 of 89). Despite these shared abilities, Plaintiff alleges, both in his original Complaint and in his Response to Defendant's motion for summary judgment, it was Zam who had primary control of X-L's finances and financial policies, including payment and filing of payroll tax returns (Docket No. 35, Attachment 6, pp. 7, 8, 23 of 30). Zam does not dispute this claim (Docket No. 35, Attachment 7, p. 60 of 89; Docket No. 40, Attachment 1).

During the years 2005 to 2008, X-L failed to pay federal withholding taxes on behalf of its employees (Docket No. 1, Attachment 1). Specifically, X-L failed to turn over funds from the following tax quarters: period ending June 30, 2005, period ending September 30, 2006, period ending December 31, 2006, period ending March 31, 2007, period ending June 30, 2007, period ending September 30, 2007, and period ending December 31, 2007 (Docket No. 1, Attachment 1). Plaintiff denies having any knowledge of X-L's failure to pay its obligation prior to October 2007, at which point Plaintiff alleges he discovered X-L's failure to make *one* quarterly tax payment (Docket No. 35, Attachment 6, p. 13 of 30).

In April 2008, the Internal Revenue Service ("IRS") sent Revenue Officer Pamela Amburgy out to speak with Plaintiff and Zam regarding the unpaid taxes (Docket Nos. 35, Attachment 6, p. 23 of 30; Attachment 7, pp. 31-32 of 89). The officer informed both men of their potential personal liability if the debt remained unpaid (Docket Nos. 35, Attachment 2, p. 1 of 3; Attachment 7, pp. 31-32 of 89). It was only after this meeting that Plaintiff admits to having knowledge of the full extent of X-L's tax liability

(Docket No. 35, Attachment 6, p. 23 of 30). Both Plaintiff and Zam were subsequently repeatedly notified via mail of X-L's failure to pay (Docket No. 35, Attachment 6, p. 23 of 30). The taxes remained unpaid. It is Plaintiff's allegation that he trusted Zam to correct the situation (Docket No. 35, Attachment 6, pp. 23-24, 27 of 30). Pursuant to 26 U.S.C. § 6672, both Plaintiff and Zam were assessed personal liability in the balance amount of $219,259.63 and $212,904.50, respectively (Docket No. 17, p. 7 of 11).

Plaintiff officially retired from X-L on June 27, 2008 (Docket No. 35, Attachment 6, pp. 12-13 of 30), but maintained his ownership in the Company (Docket No. 35, Attachment 7, p. 35 of 89). The Company continued to operate after Plaintiff's departure (Docket No. 35, Attachment 6, p. 13 of 30). X-L stopped taking HVAC jobs sometime in 2009 (Docket No. 35, Attachment 6, p. 13 of 30). In early 2010, Zam attempted to start another HVAC business, Skyway Sheet Metal ("Skyway") (Docket No. 35, Attachment 7, p. 38 of 89). Skyway performed only one job and failed to get off the ground (Docket No. 35, Attachment 7, p. 37 of 89).

Sometime during 2010, Plaintiff alleges he discovered Zam had been scavenging wire and stainless steel equipment from X-L's building and selling the materials for scrap copper (Docket No. 35, Attachment 6, p. 14 of 30). Plaintiff also alleges he had difficulty contacting Zam and had been locked out of X-L's building (Docket No. 35, Attachment 6, pp. 14-15 of 30). In September 2010, when Plaintiff finally managed to gain access to the building, he conducted a sale and sold almost all of X-L's assets (Docket No. 35, Attachment 6, p. 14 of 30). Proceeds from that sale went into a fund to maintain the mortgage payments on the Company's building (Docket No. 35, Attachment 6, p. 14 of 30). In the fall of 2010, Plaintiff began renting X-L's building to Ramsey Restorations (Docket No. 35, Attachment 6, p. 13-14 of 30).

Since January 2011, Plaintiff has been making monthly payments to the IRS for the trust fund

4

recovery penalty via deductions in his monthly Social Security check (Docket No. 35, Attachment 6, pp. 26-27 of 30). Neither Plaintiff nor Zam has made any additional payments to the IRS (Docket No. 35, Attachment 6, p. 27 of 30). On January 13, 2011, Zam gave Plaintiff full authority to wind up the affairs of both X-L and Gazelle (Docket Nos. 35, Attachment 6, p. 10 of 30; Attachment 7, p. 13 of 89).

### III. PROCEDURAL BACKGROUND

Plaintiff was assessed personal liability for the outstanding tax debt of X-L in the amount of $231,243.65 for the periods ending June 2005, September and December 2006, and March, June, September, and December 2007 (Docket No. 1). Plaintiff made payments on this debt in the amount of $2,894.30 (Docket No. 1). At some point after this initial payment, Plaintiff requested a refund from the IRS in the amount of $2,894.30 (Docket No. 1). This request was denied on February 4, 2009 (Docket No. 1, Attachment 1). Plaintiff subsequently appealed this denial to the IRS Appeals Office (Docket No. 1, Attachment 1). His appeal was denied given "[t]here [was] sufficient evidence to hold [Plaintiff] fully responsible and willful for the unpaid trust fund taxes for XL Enterprises Inc" (Docket No. 1, Attachment 1).

Plaintiff filed a Civil Complaint on August 5, 2010, requesting: (1) a return of monies erroneously and illegally collected by the IRS; and (2) to set aside the deficiency determined by the IRS by finding Plaintiff not a responsible or willful party in the payment of payroll taxes for X-L (Docket No. 1). Defendant filed its Answer on March 11, 2011 (Docket No. 14). Shortly thereafter, on March 15, 2011, both parties requested a continuance of a Case Management Conference so that they could have adequate time to determine whether or not this Court had jurisdiction over the matters listed in Plaintiff's Complaint (Docket No. 15). On April 1, 2011, Defendant filed its Amended Answer admitting: (1) Plaintiff made certain payments to the IRS in an attempt to satisfy X-L's

5

outstanding tax obligation; (2) Plaintiff requested a refund of these payments; and (3) Plaintiff was

denied a refund, both initially and on appeal (Docket No. 17). Defendant denied: (1) the facts upon

which the Plaintiff relied as the basis for his Complaint; and (2) this Court has jurisdiction of the

matter pursuant to 28 U.S.C. § 1346(a)(1) (Docket No. 17).

In addition to its Answer, Defendant filed a Counterclaim against Plaintiff, joining his business

partner Zam as a defendant (Docket No. 17). The government sought: (1) a judgment dismissing

Plaintiff's Complaint; (2) a judgment in favor of the government in the amount of $219,259.63 and

$212,904.50 against Plaintiff and Zam, respectively; (3) all costs associated with the action; and (4)

any statutory additions accruing after February 21, 2011, including interest pursuant to 26 U.S.C. §§

6601, 6621, and 6622, and 28 U.S.C. § 1961(c) (Docket No. 17).

On April 21, 2011, Plaintiff submitted his Answer to Defendant's Counterclaim, essentially

denying all allegations set forth by the government (Docket No. 20). Plaintiff also filed a Cross-Claim

against Zam alleging it was Zam, not Plaintiff, who had control over XL's finances and that it was

Zam who ultimately bore the responsibility for the unpaid payroll taxes (Docket No. 20). Plaintiff

sought dismissal of the government's Counterclaim and a finding that Zam was solely responsible for

the taxes complained of by the government (Docket No. 20). In the alternative, Plaintiff sought

indemnification against Zam for any amount of taxes Plaintiff may be required to pay (Docket No. 20).

On May 2, 2011, the parties consented to the jurisdiction of the undersigned Magistrate for all

further proceedings, including trial, entry of final judgment, and post-trial proceedings (Docket No.

22). On December 19, 2011, Defendant filed a motion seeking to hold Zam in contempt for failure to

appear at a deposition for which he was subpoenaed (Docket No. 31). A subpoena was issued to Zam

on November 16, 2011, requiring his presence at a deposition to take place at the United States

6

Attorney's Office in Toledo, Ohio (Docket No. 31, p. 2 of 5). Zam was personally served with the notice on November 17, 2011 (Docket No. 31, p. 2 of 5). On the date of the scheduled deposition, December 1, 2011, Zam failed to show and failed to notify anyone of a reason for his absence (Docket No. 31, p. 2 of 5). The motion was granted on January 3, 2012 (Docket No. 32).[2]

On February 17, 2012, Defendant filed a Motion for Summary Judgment, now pending before this Court, alleging there is no genuine issue of material fact that Plaintiff "was a responsible person of [X-L] who willfully failed to collect, truthfully account for or pay over to the United States the income and Federal Income Contributions Act . . . taxes withheld from the wages of the employees of [X-L]" for the tax periods in question (Docket No. 35, pp. 1-2 of 21). Plaintiff filed his response on March 25, 2012, denying Defendant's assertion (Docket No. 40). Defendant filed its Reply in support of its motion on April 5, 2012 (Docket No. 41).

### IV.  MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(a). The moving party bears "the initial burden of proving that no genuine issue of material fact exists." *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). The court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Id*. Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Averill v. Gleaner Life Ins. Soc'y*, 626 F.Supp.2d 756, 761 (N.D. Ohio 2009) (*citing Anderson v.*

---

[2] Defendant Zam eventually appeared and consented to a deposition on January 27, 2012 (Docket No. 35, Attachment 7).

7

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)) (*quoting* FED.R.CIV.P. 56(e)).

Once the burden shifts, Rule 56(e) requires the nonmoving party "go beyond the [unverified]

pleadings" and present some type of concrete evidentiary material in support of its position. *Averill*,

626 F.Supp.2d at 761 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The nonmoving

party "cannot rest on its pleadings or merely reassert its previous allegations." *Averill*, 626 F.Supp.2d

at 761. It is "insufficient 'simply [to] show that there is some metaphysical doubts as to the material

facts.'" *Id.* (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In deciding a motion for summary judgment, "the evidence of the non-moving party will be

believed as true, all doubts will be resolved against the non-moving party, all evidence will be

construed in the light most favorable to the non-moving party, and all inferences will be drawn in the

non-moving party's favor." *Averill*, 626 F.Supp.2d at 761 (*citing Eastman Kodak Co. v. Image

Technical Servs., Inc.*, 504 U.S. 451, 456 (1992)). Summary judgment will only be rendered if the

"pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law." *Averill*, 626 F.Supp.2d at 761 (*citing Celotex,* 477 U.S. at 322); *see

also* FED.R.CIV.P. 56(c).

## V. ANALYSIS

### 1. Trust Fund Tax Liability

The Internal Revenue Code ("the Code") requires most employers to withhold various taxes

from their employees' wages, including Social Security, Medicare, and federal income taxes. 26

U.S.C. §§ 3102, 3402. Commonly referred to as "trust fund taxes," these funds are collected by the

employer every time wages are paid and are held in trust for the United States, paid to the federal

Treasury only on a quarterly basis. 26 U.S.C. § 7501. Withheld funds "are for the exclusive use of the Government and are not to be used to pay the employer's business expenses, including salaries, or for any other purpose." *Gephart v. United States*, 818 F.2d 469, 472 (6th Cir. 1987) (*citing McGlothin v. United States*, 720 F.2d 6, 8 (6th Cir. 1983)).

Congress has created a rigorous penalty for those employers who fail to properly remit withheld taxes to the government. Section 6672(a) subjects any responsible party who willfully fails to remit the withholding taxes to the government to *personal* liability. Section 6672(a) states:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the amount of the tax evaded, or not collected, or not accounted for and paid over.

Therefore, § 6672 exists "to protect the government against losses by providing it with another source from which to collect the withheld taxes." *Gephart*, 818 F.2d at 473.

Under the Code, a "person," for purposes of § 6672(a), is defined as "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b). Like many circuits, the Sixth Circuit has found a taxpayer to be liable if he is: (1) "'a responsible person' under the statute; and (2) [has] 'willfully' failed to pay over the taxes due." *Kinnie v. United States*, 994 F.2d 279, 283 (6th Cir. 1993) (*citing McDermitt v. United States*, 954 F.2d 1245, 1251 (6th Cir. 1992)). Therefore, Plaintiff bears the burden of demonstrating that there exists a genuine issue of material fact regarding: (1) whether he is a "responsible person;" and (2) if so, whether he willfully failed to turn over the payroll taxes.

**2. Responsibility**

To determine whether an individual is a "responsible person," a court must focus upon "the degree of influence and control which the person exercised over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors." *Gephart*, 818 F.2d at 473. Courts have relied upon a variety of factors when determining whether an individual is a "responsible person" including, but not limited to: (1) the duties of the officer according to corporate by-laws; (2) the ability of the individual to sign corporation checks; (3) the identity of the officers, directors, and shareholders of the corporation; (4) the ability of the individual to hire and fire employees; and (5) the identity of any individual in control of the financial affairs of the corporation. *Id*. Essentially, "liability is predicated upon the existence of significant, as opposed to absolute, control of the corporation's finances." *Id*. Section 6672 "does not confine liability for the unpaid taxes only to the single officer with the greatest or the closest control or authority over corporate affairs . . . [it] encompasses all those who are so connected with a corporation as to have the responsibility and authority to avoid the default which constitutes a violation."*Id*. at 476 (*citing Bolding v. United States*, 565 F.2d 663, 671 (Ct. Cl 1977)). Therefore, more than one person can be deemed a "responsible person." *Kinnie*, 994 F.2d at 284 (*citing Gephart*, 818 F.2d at 476).

Particularly significant to the case at hand, in order to be deemed a "responsible person" within the meaning of § 6672, it is not necessary that the individual "be the one who prepared the tax returns, kept the books and records, paid the wages or withheld the taxes." *McGlothin v. United States*, 720 F.2d 6, 8 (6th Cir. 1983). Furthermore, "one who possesses significant control over the company's financial affairs may not escape liability by delegating the task of paying over the taxes to someone else." *Kinnie*, 994 F.2d at 284 (*citing Gustin v. U.S. I.R.S.*, 876 F.2d 485, 491 (5th Cir. 1989)).

10

a.      **Plaintiff is a "responsible person" for purposes of § 6672(a)**

Despite his argument to the contrary, Plaintiff is a person required to collect, truthfully account for and pay over the withheld taxes. In other words, Plaintiff is a "responsible person" for purposes of § 6672(a) liability.

The main thrust of Plaintiff's argument is his allegation that he and Zam had different day-to-day responsibilities: Plaintiff alleges he was merely in charge of fabricating the material used in X-L's HVAC units while Zam was in charge of HVAC installation and transacting company business (Docket Nos. 35, Attachment 6, pp. 17-18, 20 of 30; Attachment 7, p. 17 of 89). Plaintiff contends he did not involve himself in X-L's financial matters; rather he only concerned himself with HVAC material fabrication tasks in the Company's workshop (Docket No. 35, Attachment 6, pp. 7, 8, 23 of 30). Plaintiff stated multiple times during his deposition that he placed all his trust concerning X-L's financial matters in Zam (Docket No. 35, Attachment 6, pp. 22, 24, 27, 28 of 30). In Plaintiff's words, "every time I went into the shop, I flipped a switch and the lights came on. Everything seemed to be going along as it should be, . . ." (Docket No. 35, Attachment 6, p. 28 of 30).

Everything Plaintiff alleges is true: he worked primarily in X-L's shop fabricating material for the HVAC units; Zam spent most of his day in the office taking care of X-L's administrative tasks (Docket Nos. 35, Attachment 6, p. 17-18 of 30; Attachment 7, p. 17 of 89). Plaintiff trusted Zam implicitly to handle X-L's finances, he himself very rarely taking a role in the office work (Docket No. 35, Attachment 6, p. 27 of 30). It is even true Zam admitted responsibility for the non-payment of the payroll taxes (Docket No. 35, Attachment 6, p. 29 of 30; Docket No. 40, Attachment 1). Despite the truth of  these facts, they are not enough to excuse Plaintiff as a "responsible person." Nor are they enough to satisfy Plaintiff's burden against the motion for summary judgment.

11

Plaintiff readily admits he was both Vice President and Treasurer of X-L (Docket No. 35, Attachment 7, p. 16 of 89). He admits he, like Zam, was a 50% shareholder (Docket No. 35, Attachment 6, p. 6 of 30). Plaintiff also admits he had the authority to sign company checks (Docket Nos. 35, Attachment 6, p. 6 of 30; Attachment 7, pp. 13-14 of 89), co-sign or guarantee loans on behalf of X-L (Docket No. 35, Attachment 6, p. 8 of 30), and had unfettered access to company financial records (Docket No. 35, Attachment 6, pp. 17-18 of 30). Plaintiff admits he had the ability to hire and fire X-L employees without consultation with, or approval by Zam (Docket No. 35, Attachment 7, p. 16 of 89). Plaintiff received the same salary as Zam (Docket Nos. 35, Attachment 6, p. 16 of 30; Attachment 7, p. 28 of 89) and, when fiscally appropriate, received dividend payments, just like Zam (Docket No. 35, Attachment 7, p. 28 of 89).

To argue against summary judgment, Plaintiff relies upon *DiStasio v. United States* (22 Ct. Cl. 36 (1990)), a case from the United States Court of Federal Claims. Not only is this case not factually on point, it is also not controlling authority for the Sixth Circuit. In *DiStasio*, Plaintiff DiStasio owned and operated his own business, which subsequently merged with another corporation. *DiStasio*, 22 Ct. Cl., at 39.  After the merger, DiStasio was given a 24.5% share in the resulting company, which eventually turned into a 49% share. *Id*. DiStasio could never, at any time during his tenure, make a management decision without the consent and approval of the majority shareholder. *Id*.  DiStasio never managed the corporation on a day-to-day basis and was only in the office one to two hours per day. *Id*. at 45. DiStasio had little knowledge of the corporation's financial affairs or status and had no ready access to the corporate books. *Id*. Although DiStasio had the ability to sign corporate checks, all checks over $2,000 required two signatures. *Id*. at 46. Further, DiStasio usually just signed stacks of blank checks to enable the majority shareholder to later easily direct appropriate payments. *DiStasio*,

12

22 Ct. Cl., at 47.  The Court subsequently found DiStasio failed to qualify as a "responsible person," given his minimal ability to control the finances of the corporation. *Id*. at 45. Even from this brief iteration of the *DiStasio* facts, it is clear the case is not factually on point with the case at bar.

Disposition of the question of whether or not Plaintiff is a "responsible person" is more accurately governed by a 1993 Sixth Circuit Court of Appeals case, *Kinnie v. United States* (994 F.2d 279 (6th Cir. 1993)). In *Kinnie*, plaintiff Kinnie formed a corporation with his partner whereby each partner was a 50% owner. *Kinnie*, 994 F.2d at 281. Kinnie served as Vice President and his partner as President. *Id*. The corporation began failing to pay the appropriate payroll withholding taxes in 1985, but continued to pay other creditors. *Id*. Kinnie testified he learned of the delinquency in late 1986, but even then trusted his partner to take care of the debt. *Id*. Subsequently, Kinnie directed an accountant to review the corporation's financial records and, in early 1987, Kinnie forced his partner to relinquish any management control of the corporation. *Id*. at 281-82. Kinnie then established a new corporation identical to the first, essentially subsuming the partners' original corporation. *Id*. at 282. Kinnie took out personal loans to satisfy the debts of the new company, yet still failed to pay the payroll taxes. *Kinnie*, 994 F.2d at 282.

Kinnie filed an action in district court seeking a refund and tax abatement for the total amount due. *Id*. The government opposed the action and subsequently filed a motion for summary judgment, which the district court granted. *Id*. Kinnie admitted he was Vice President and a 50% shareholder, had the authority to sign company checks, had an accountant review the corporate books, and forced his partner to give up management control. *Id*. at 284. Yet, on appeal, Kinnie argued he could not be a "responsible person" because all financial duties were delegated to his partner, and Kinnie was merely a passive investor during the time period the payroll taxes accrued. *Id*. at 283-84. In upholding the

13

district court's grant of summary judgment, the Sixth Circuit disagreed, stating, "there may be more than one person deemed a 'responsible person' within a corporation. Moreover, one who possesses significant control over the company's financial affairs may not escape liability by delegating the task of paying over the taxes to someone else." *Kinnie*, 994 F.2d at 284 (internal citations omitted). The Court held that although Kinnie "did not always exercise his powers during the quarters at issue," he could not be absolved of "responsible person" status. *Id*.

It is clear *Kinnie* most accurately resolves the issue before this Court. Like Kinnie, Plaintiff was a 50% shareholder of a company (Docket No. 35, Attachment 6, p. 6 of 30). Like Kinnie, Plaintiff was the Vice President and Treasurer of that company (Docket No. 35, Attachment 7, p. 16 of 89). Like Kinnie, Plaintiff had the authority to sign company checks and had unfettered access to company financial records (Docket Nos. 35, Attachment 6, pp. 17-18 of 30; Attachment 7, pp. 13-14 of 89). Plaintiff also had the authority to lock Zam out of the X-L premises (Docket No. 35, Attachment 6, p. 14 of 30) and control the ultimate winding up of X-L's business affairs (Docket Nos. 35, Attachment 6, p. 10 of 30; Attachment 7, p. 13 of 89). Furthermore, Plaintiff and Zam had the same amount of education (Docket Nos. 35, Attachment 6, p. 5 of 30; Attachment 7, p. 10 of 89). If anything, Plaintiff was *more* financially savvy than Zam, given his role as trustee for the union pension plan (Docket No. 35, Attachment 6, p. 5 of 30). Just because Plaintiff, like Kinnie, failed to exercise his clear right to sign company checks, access company financial records, and participate in company financial management does not mean he can be relieved of "responsible person" status. Therefore, Plaintiff is a "responsible person" for purposes of § 6672, satisfying the first requirement of liability.

## C. Willfulness

In addition to finding the taxpayer to be a "responsible person," § 6672 also requires a finding

14

that this "responsible person" "willfully" failed to pay over the withholding taxes. *Kinnie v. United States*, 771 F.Supp. 842, 851 (E.D. Mich. 1991), *aff'd* 994 F.2d 279 (6th Cir. 1993). A failure to properly pay over taxes is willful, for purposes of Section 6672, if "it is voluntary, knowing and intentional even though it is not done with a bad purpose or an evil motive." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). Willfulness may mean "the responsible person 'had knowledge of the tax delinquency and knowingly failed to rectify it when there were available funds to pay the Government.'" *Id.* (*quoting Gephart*, 818 F.2d at 475). "Knowledge of and the failure to pay the liability when the corporation had funds to do so is all that is necessary to establish willfulness as a matter of law." *Kinnie*, 771 F.Supp at 851 (*citing Calderone*, 799 F.2d at 259-60). Willful conduct may also occur when a responsible party "acts with a reckless disregard for obvious or known risks." *Kinnie*, 771 F.Supp at 852 (internal citations omitted). Further, a responsible person may be liable for taxes accrued before he had actual knowledge of the unpaid taxes if sufficient funds are paid to the corporation to satisfy the earlier liabilities after the "responsible person" learns a deficiency exists. *Kinnie*, 994 F.2d at 285.

### 1.     Plaintiff willfully failed to pay over the trust fund taxes at issue

Plaintiff was a "responsible person" of X-L before and after he learned the payroll taxes were not being paid. *See* discussion *supra* Part V.2.a. Plaintiff claims he first learned past due withholding taxes were due to the United States sometime in October 2007 (Docket No. 35, Attachment 6, p. 13 of 30). There is some evidence to suggest Plaintiff knew of at least part of the delinquency prior to this date; however, this Court must consider the facts in the light most favorable to the Plaintiff. Therefore, the Magistrate considers October 2007 to be the first time Plaintiff knew of the tax delinquencies.

Once Plaintiff knew of the delinquency, he had an obligation to see that it was corrected.

15

Despite this duty, Plaintiff fully admits he made no attempt to review X-L's finances or even further inquire of Zam as to whether the taxes had been paid (Docket No. 35, Attachment 6. p. 24 of 30). Instead, Plaintiff chose to trust Zam to correct the problem (Docket No. 35, Attachment 6, p. 27 of 30). On April 2, 2008, Plaintiff met with IRS Revenue Officer Amburgy at which time Plaintiff was advised of the full extent of X-L's unpaid withholding taxes (Docket No. 35, Attachment 6, p. 23 of 30). At that point, it became abundantly clear Zam had not kept his promise to rectify the delinquency but had rather allowed the debt to continue to accumulate. Once again, Plaintiff fully admits he did not follow up with Zam about whether or when the taxes would be paid (Docket No. 35, Attachment 6, p. 27 of 30), nor did Plaintiff make any voluntary payments or take any steps to ensure the taxes would be paid (Docket No. 35, Attachment 6, p. 24 of 30). Plaintiff's failure to take any steps to satisfy X-L's outstanding obligation cannot be set off by his complete faith in Zam, or even by Zam's sworn statement that Zam was the "responsible person" at X-L. The law requires *any* "responsible person" to take ameliorative steps to remedy an outstanding tax liability once he learns of the obligation. Plaintiff was a "responsible person" during the period at issue. *See* discussion *supra* Part V.2.a. He learned of X-L's obligation in October 2007 (Docket No. 35, Attachment 6, p. 13 of 30). At that point, Plaintiff was required to take corrective action. He failed to do so, and failed to do so voluntarily, knowingly, and intentionally. Plaintiff's behavior was therefore "willful" for purposes of Section 6672, thus satisfying the second requirement for personal liability.

### 2. Plaintiff is responsible for the entire amount assessed against him, not just the amount that accrued after he became aware of X-L's liability

Not only is Plaintiff personally responsible for the tax obligations that accrued after October 2007, Plaintiff is also personally responsible for the *entire amount* owed to the government. Under *Kinnie*, a responsible person who willfully fails to turn over funds may be liable for taxes accrued

16

before he had actual knowledge of the unpaid taxes if sufficient unencumbered funds are paid to the corporation to satisfy the earlier liabilities after the "responsible person" learns a deficiency exists. *Kinnie*, 994 F.2d at 285. Plaintiff is therefore responsible for the entire amount of assessed taxes, despite allegedly not knowing of the debt until October 2007, two years after the withholding taxes first went unpaid.

The unpaid tax balance for which Plaintiff is assessed is $219,259.63 (Docket No. 17, p. 7 of 11). As of November 1, 2007, X-L had $30,648 in its accounts (Docket No. 35, Attachment 8, pp. 1, 37 of 72). For purposes of § 6672, "funds are considered encumbered only where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and [the] legal obligation is superior to the interest of the IRS in the funds." *Bell v. United States*, 355 F.3d 387, 394 (6th Cir. 2004). From October 2007 until June 27, 2008, the date of Plaintiff's retirement, X-L took in $992,188.88 in unencumbered funds and expended $962,751.73 (Docket No. 35, Attachment 8, pp. 1-72 of 72). From April 2008, the date Plaintiff admits knowing the full extent of the tax liability, X-L took in approximately $468,332.77 (Docket No. 35, Attachment 8, pp. 23-36, 59-72 of 72), only $41,700 of which was paid over to the United States (Docket No. 35, Attachment 8, pp. 23-36, 59-72 of 72).

In September 2010, well after his retirement but while he still maintained his status as a 50% shareholder, Plaintiff locked Zam out of X-L's building and held a garage sale of sorts, selling almost all of X-L's assets and placing the proceeds in an X-L checking account (Docket No. 35, Attachment 6, p. 14 of 30). In January 2011, Zam signed over his share of the company to Plaintiff so Plaintiff could wind down X-L's affairs (Docket Nos. 35, Attachment 6, p. 10 of 30; Attachment 7, p. 13 of 89). Plaintiff then began renting out X-L's space to a third party and collecting rent on the property, also

17

placing these rent payments in an X-L checking account (Docket No. 35, Attachment 6, pp. 13-14 of 30). Plaintiff still failed to voluntarily make even one payment to the IRS on X-L's behalf (Docket No. 35, Attachment 6, p. 27 of 30). He is only now making payments on the debt because funds are being garnished by the government from his monthly Social Security check (Docket No. 35, Attachment 6, pp. 26-27 of 30).

Plaintiff had ample opportunity to resolve X-L's unpaid taxes and avoid personal liability for those taxes after October 2007. Instead, Plaintiff elected not to pay or voluntarily reduce X-L's tax liability, but to rather rely on Zam to take care of the problem. This is true despite the fact Zam never made any effort to resolve the debt from the moment it began accruing.

Accordingly, as a "responsible person" who willfully failed to turn over payroll taxes for all periods at issue, Plaintiff is personally liable for the entire amount of X-L's outstanding payroll tax liability, $219,259.63, plus interest accruing after February 21, 2011. Furthermore, as a "responsible person," Plaintiff is not entitled to a refund of the $ 2,894.30 in payroll taxes he has already paid.

### VI. CONCLUSION

For these reasons, the Magistrate finds Plaintiff was, at all times relevant to this motion, a "responsible person" of X-L. Furthermore, Plaintiff's actions and inactions were willful. The satisfaction of these two requirements make Plaintiff personally liable for the entire tax assessment of X-L. Therefore, the Magistrate grants Defendants' Motion for Summary Judgment.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   August 20, 2012

18